This appeal arises from a $28 million securities and accounting fraud in which the two defendants who are appealing personally directed employees of their company to falsify sales reports, invoices, bills of ladings in order to prop up the company's stock price, and in which the two defendants also engaged in a separate embezzlement scheme in which they pocketed over $2 million. The district court in this case ultimately determined that their sentencing guideline range was from 70 to 87 months, and yet — and that's a range that was actually less than the potential exposure contained in the plea agreements that both defendants entered into. The district court nevertheless went on to rely cursorily on three relatively minor factors, one of which was already accounted for fully by the guidelines, to reduce the guideline — to reduce the sentence by approximately 66 percent or two-thirds. The issue presented by this appeal is whether such a sentence, which deviated from the guidelines to an extent that was unjustified by the reasons provided by the district court, was unreasonable and the government's position that it is. All of the courts, the other circuit courts that have confronted similar issues to the one in this case, have adopted a relatively straightforward principle, and the principle is that the further that a district court deviates from the guidelines, the more compelling must be its justification for doing so. Well, yeah, but those are other circuits, and this is this circuit. Yes, Your Honor, and this Court has explicitly reserved the question of what kind of weight the guidelines should play in reasonableness review. Well, I'm not so sure that's right. Well — It seems to me that Zavala is just awfully clear in saying that the guidelines get no thumb on the scale. I would respectfully disagree, Your Honor. The reason is this. I don't think otherwise. Well, the way I read Zavala is that Zavala was a case that involved a district court saying that he was going to attach presumptive weight at the district court level to the guidelines, and then it was up to the defendant. The defendant had the burden in order to justify why a departure from those guidelines or a deviation was warranted. This is an entirely different case, Your Honor. First, I would note that there is an en banc petition that's pending in Zavala. But assuming that Zavala — I'm not aware of that, but the moment Zavala is on the books — Yes, Your Honor. And assuming that Zavala does become the law of this circuit, Zavala is nevertheless a case that deals with the presumption or a district court stating that there was a presumption of guidelines weight at the district court level, not — There's a lot of language about that, but as I read it, what Zavala really says, it's pertinent to what argument you're just making, is that the guidelines are weighted exactly the same. They're A factor along with all of the other 3553A factors. That is, they get no special weight, and so therefore some kind of variance from the guideline range doesn't get any weight. I — Two points, Your Honor. I would, without wanting to quibble with Your Honor — The reason I'm asking the question is to get quibbling. There's no point in having an oral argument if you don't quibble with me. Well, then let me just get to my quibbles, then. The first quibble, Your Honor, is that, as I read Zavala, Zavala was a case that really dealt with the burden. The problem with the word presumption that the district court used in sentencing the defendant in Zavala was that it established a burden. I don't think that this Court in Zavala squarely addressed the question whether at the district court level, the — what kind of weight should be provided, the guidelines, which is — which is not only a factor that is required to be considered under 3553A, but also that's repeated essentially by 3553A-6, the standard provision dealing with avoiding unwarranted disparities between defendants. Second, Your Honor, Zavala is a case that dealt with the kind of methodology, if you will, that should be applied by sentencing courts. It did not address the question of what kind of weight the guidelines should play in structuring reasonableness review. Well, so now we want to have not only confusing standard, but two different confusing standards, I mean, one that's going to guide the district court and one that's going to guide us. Your Honor, I would respectfully submit that if the guidelines do not play a vital role in structuring reasonableness review, and that's all that we're talking about at this point, not the issue in Zavala, then essentially reasonableness review reduces into a subjective puddle in which a differing — appellate courts are going to have differing senses of what is a reasonable and unreasonable sentence. The guidelines, because they're the only factor under 3553A that are quantitative,  the phraseology from the Zavala case, but they also have to play a role in structuring the reasonableness review, and that's why this Court did not decide that issue in Zavala. And, in fact, in the Carty case, which was — which is a much more recent case, this Court explicitly reserved the issue of what role the guidelines should play in structuring reasonableness review, and that's why other circuit courts, the First District Court, the Court of Appeals, the Court of Appeals, the Court of Appeals does not have the principle that the government is urging this Court to adopt, which is that the further that a district court deviates from the sentencing guidelines, the more compelling its justification needs to be. Language in this Court's own decisions, in the Manyweather case, in the Mix case, and in the Carty case, supports this general principle. In all of those cases, this Court distinguished between guideline and non-guideline sentences and emphasized, I think that's the language in Carty, the importance of a district court in imposing a non-guideline sentence in explaining the extent of its departure, not simply the basis, the extent of its departure. There's also, Your Honor, support for this principle in 3553C2. That's the provision of the Code that explicitly requires the district judge to provide specific reasons for imposing a sentence outside the guidelines. All of those bases and all of those authorities support the proposition that the government is urging this Court to adopt in this case. And if this Court does adopt that principle, I think that if you look at the reasons provided by the district judge in reducing the sentence in this case, approximately 66 percent, the sentence simply cannot stand, and this case should be remanded. The three factors cited by the district judge were health, age, lack of criminal history. With respect to lack of criminal history, first of all, it's unclear what role this factor actually played in the district judge's sentencing decision, in that, in the same breath that the district court said that there was no criminal history, it also acknowledged that the defendants had, in fact, engaged in a separate fraud previously at their prior employer, CPI. So it's unclear what role this factor played. And second of all, it's a factor that was fully accounted for by the guidelines. By relying on this factor, Your Honor, the district judge not only failed to give an adequate weight to the guidelines, but the district court also devalued 3553A6. The only thing you can do is to say, well, if you take the position that anything accounted for in the guidelines has to be, if accounted for in the guidelines, you must follow the guidelines, unless you get out of the normal reach of the guidelines, you're just back to talking about guideline departure arguments, and that's reestablishing the guidelines for all practical purposes, it seems to me. Zavala did say the guidelines are the starting point. Our prior cases said the same thing, that it's a starting point for the district judge. But the argument you made earlier on and the argument you're making now are essentially, well, the guidelines remain a requirement on the district judge, unless the district judge can find something that's not covered by the guidelines and That sounds an awful lot like reestablishing pre-Booker law. That's not our intent, Judge Fernandez. It might not be your intent, but it sounds like you're saying. Well, then let me clarify what I'm saying. We, in no way, want to establish or try to reestablish the sentencing system that existed before Booker. Your Honor, the fact that a factor was fully accounted for by the guidelines, and the fact that the district judge failed to consider what effect, in terms of 3553A6, the provision dealing with unwarranted disparities between defendants, the reason that the guidelines have weight is not because they're the rule, Judge Fernandez, not because they're required, not because judges must impose guideline sentences. To the contrary, there might be many cases where a defendant can take into account a factor that's already accounted for by the guidelines and use that under Booker to deviate from the guidelines even more. The government has no quibble with that. But the reason that the guidelines must continue to play a vital role, not only at the district court, but also in terms of reasonableness review, is because they're not only a factor that needs to be considered in a 3553A, but also they're the only way to objectively implement the mandate of 3553A6. Well, objective is an interesting concept once you have Booker, because the court says we're doing reasonableness review, which sounds something like abuse of discretion review. Objective reasonableness is a little bit peculiar in this context. For example, you want to pick these things piece by piece. The district judge looks at it and says, yeah, I'm looking at these guys' criminal background, I'm looking at their age, I'm looking at their health. I think all of those things taken together mean that there's a different point within the reasonableness territory. The guidelines are one, yes, and I've considered that. But I think all these things establish another reasonable point, and that's what I'm going to pick. And our question is, is that a reasonable point, not, did the guidelines ever talk about age, did they ever talk about criminal history, et cetera? It seems to me. Your Honor, my discussion about the fact that the guidelines take into account the criminal history of defendants is relevant only to the extent that it informs this court's determination as to whether the sentence was reasonable. The government is not saying that whenever a district judge departs or deviates on the basis of lack of criminal history, as it did in this case, that that sentence, if so facto, becomes unreasonable. But it informs this court's determination. And other courts, like the First Circuit and the Second Circuit, have both talked about, Judge Fernandez, the difference between relying on factors that are particular to the defendants before them and factors that are generalizable that would apply to the ---- Let's be precise. You say these guys committed some kind of fraud at some prior company. They weren't prosecuted for it, were they? That's correct, Your Honor. They weren't prosecuted. They committed some kind of fraud at some other company, right? Yes, Your Honor. District judge knows that, all right? Correct. Now, that is taken into account already in the guidelines at guideline what? Your Honor, some kind of prior fraud in the past at some other company is taken into account in these guidelines by guideline X, fill the blank. Your Honor, by the guidelines criminal history category provisions. Well, they haven't been charged with anything before. It couldn't show up in criminal history, could it? So they don't take it into account in the criminal history. They say that's not part of his criminal history. Exactly, Your Honor. And that's really the government's point. So anything that you did wrong in the past that's not taken into account in your criminal history is not sufficient ground or is or is not a sufficient ground for the district court to do something. That's absolutely correct. And the reason that I bring up the prior fraud is that it's correct. Because he said is or is not. I don't understand what's correct. Well, let me try to explain then. Is is correct or is is not correct? Judge Fernandez is always correct. Now. Except maybe in Zavala. Let me explain. Let me try to explain the criminal history point, Your Honor. The defendants fell into criminal history category one. The district court in this case said, well, I'm going to essentially double count that. I'm going to not only apply the guidelines which take into account that they fell into criminal history category one, I'm also going to use that as a basis for deviating further from the guidelines in the amount of approximately 66 percent. Problem for this court to consider on reasonableness review, which is that first of all, how much weight is really should be placed on a factor that's already taken into account by the objective guidelines and that and and when taking into account that factor would presumably conflict with the mandate of thirty five fifty three eight six number one. That's just more analogical talk. When you say wait, things don't have this has weight. My lack of criminal history doesn't have any weight. So what do you mean by how much weight the district judge can consider objectively? Objectively, I could tell you the weight of this. Tell me the objective concept on how much weight the district judge can give what it considers their essential lack of criminal history. Your Honor, there's not an algorithm or calculus. Well, you said you wanted to be objective. Yes, Your Honor. And I think that that should be the standard. But there's not an algorithm whereby this court needs to for sentences that deviate greater than 50 percent, for example, need to provide X number of reasons. That's not what the government's arguing. The general principle, Your Honor, is simply that the greater the deviation, in this case, the deviation was dramatic. There have to be correspondingly dramatic and compelling reasons for that departure. Well, in Manyweather, for example, we suggested that the objective basis might be looking at what departures had been affirmed in similar cases. Is that something that you're talking about? Well, the court would be different from that. Well, Manyweather is a little bit different than this case in that in Manyweather, the district court actually departed under the guidelines. In other words, Manyweather was not a non-guideline case like this one was. This court affirmed on the grounds that the departure exceeds. Yes. What I'm saying is that the opinion suggests that one measure of an apparently extreme departure might be whether what other courts have done in similar circumstances in affirming them. Your Honor, I think that's a useful lens for this court to apply in applying reasonableness review. And the way it would work in this case is that the district court didn't cite any other cases, as in the Manyweather case. In the Manyweather case, the district court cited other cases in which there had been similar departures. In this case, there was no finding, no opinion offered by the district judge that in other similar cases, with other defendants who didn't have criminal histories but who had engaged in fraud previously, were getting lesser sentences in the range of 66 percent less than the guidelines provided. There was no such finding with respect to – and that goes to – that relates to all of the factors that the district judge relied on. With respect to age, there was no finding as to, first of all, whether it was the age at the time of the offense or at the time of the sentencing that was driving the district judge's analysis. There was no finding as to whether their ages were greater or lesser than those of other corporate fraud defendants who had been convicted. With respect to health, there was similarly no finding, nothing said by the district court as to whether their health conditions, given their ages, were any worse or better than those of similarly situated defendants. The record is bereft of any explanation, and the problem is that not only did the district judge fail to explain the relevance of these factors that it relied on, it completely devalued 3553A6. It didn't even mention that factor. And this Court has said district courts don't have to go through every single 3553A factor, but when a 3553A factor is completely thrown out the window, one would expect, in applying reasonableness review, is if reasonableness review is not to be simply a rubber stamp. Kennedy, do we know that the district judge paid no heed to that? We've said they don't have to talk about each one, so you're suggesting that we should infer it was thrown out the window because you think that the disparity is too great? Your Honor, because she mentioned almost all of the other 3553A factors, but didn't mention that one, and that was the one that got the shortest shrift in this sentence, that and the guidelines factor. I'd like to reserve the remainder of my time for rebuttal. Thank you. Good morning, Your Honors. May it please the Court, I'm John Crouching on behalf of OSIFCON, and Mr. Nick Hanna is here on behalf of Sultan Khan. With Your Honor's permission, we would like to split the argument. I would be addressing the reasonableness issues under Booker, and Mr. Hanna is available to answer questions regarding the, there's a separate Butler grouping issue, as well as an issue regarding the restitution. Your Honors, I think it's important to reemphasize some of the fundamentals in this case. Since the Booker case came down about a year ago, the federal judges have been directed to do essentially two things at sentencing. First, correctly calculate the advisory guidelines, and second, apply the mandatory factors under 3553A, of which the guidelines are just one of several different factors. In the last year since Booker was decided, this Court has provided some ground rules about how the district court should go about conducting that process. In cases like the Manyweather case, which came out just a few days before our brief in this case, and then again recently in the Carty case, which came out I think just a week ago today. And in those cases, the Court provided guidance on the need for the district courts to essentially make a record, to set forth at least some indication of the grounds for the sentence that the Court imposed. And specifically in the Carty case, with Judge Beezer's opinion, he said that the district of the reasoning behind its sentencing selection. And it's interesting, because there's a little bit of tension between that directive and the fact that, on the other hand, both in this circuit and in circuits all across the country, the courts have been saying almost since the day after Booker that it's okay, we don't need the district courts to become scorekeepers and to do a balance sheet and to have this mechanistic recitation of each and every single one of the 3553A factors. So on the one hand... Yeah, the problem to me is, in this case, isn't that the district judge didn't tell us what she thought she did. I mean, she said, their age is influencing me and their health is influencing me and their lack of criminal history, recidivism, is influencing me. So we know what was influencing her, but is that enough? Because if it is enough, then as long as the judge just says something that's got some basis in the record, then there is no appellate review, basically. Is that where we're at? It may be, but I'm just questioning you if that's where we're at and if that's basically where your argument leads. Well, it's an interesting question, Your Honor, and I think that where does this court draw the line? I guess it's, you know, in the Manyweather case, Judge Reel stated two reasons, two grounds, two factual grounds for what turned out to be a departure from nearly two years in prison to probation, and that was upheld as reasonable. I think it's also important to... Well, it isn't just stating grounds. I mean, he made specific, detailed findings of fact and conclusions of law. Granted, it was the third time around for that case, so it's an exceptional case. We don't have anything in that kind of detail here. We have more general observations that, I mean, I understand the problems that everybody's having with the case law. It's not like everything's pointing in the same direction. But here we have these observations, health and age, but without any articulation of what it is about the health of these individuals that explains this sentence, whether or not it's calculated in comparison with the guideline sentence, which may not be presumptive, but is a starting point, whatever that means. And so what is it, what are we supposed to look at to determine how the age and health of these people and the lack of criminal history or lack of background relates to what the government keeps pointing to is what other people are getting sentenced for similar offenses. And really, that's what the guidelines are supposed to be, in large part, calculated based upon. So if there's no explanation from the judge as to why this unique circumstance of this individual points in this direction in this much weight or this much factor, what are we reviewing? Well, I appreciate that, Your Honor. I think preliminarily age, when you're dealing with someone who's 60 years old at the time of sentencing, it's clear fundamentally what the judge is referring to and that this isn't a person of advance. You better read very gently. But it's actually more than that, Your Honor. And in this case, and … Although being on a court might not be the same as being in prison. Court. Don't go there. I won't. I'm almost 50, so. This is a district court. This is a court in the trenches. It's dealing with the busy calendar. In this case, the government and the defendants had submitted and resubmitted and then resubmitted again factors, not just age, they're 60 years old and they deserve gentle treatment. In the papers that we filed with the court, it was more than just age. It was age in connection with other things. It was, we talked about and we cited to Department of Justice statistics about the impact of incarceration on elderly inmates, inmates over 50 in that study, much less 60. And the impact that that has, the unique impact that has on a 60-year-old person's health, their aging process. The Department of Justice said that sending a 60-year-old person into prison effectively accelerates their age by more than a decade. We also cited to the fact in the cases, in the papers before the court. Now, this is not on the record, and I'll get to that, but it is in the appellate record. The papers that we filed in the court, we pointed out the lower statistically, again from Department of Justice studies, the lower rate of recidivism based on the age alone of the offender. We also cited. I mean, this is all, I mean, it's all well and good. But, you know, to the extent they say anything at all, the guidelines would indicate age is just ordinarily not a factor. In any particular case, it may well be age in combination with health, which is what I thought you were going to say, or age in combination with perhaps some peculiar family circumstance or something. But just age as such, I mean, I don't know, I guess you could argue that it's a whole lot better for somebody who's already spent most of their life in the real world to go to prison than it is to deprive somebody who's in their 20s of 10 years of their life. I mean, I don't know, but the guidelines have sort of made that policy choice. So are you driven to say forget them? I mean, just forget them? Or how do you make allowance for what the guideline actually says? I think after Booker, the judge, and this judge, Judge Cooper, certainly did consult the guidelines, and she did so very carefully. She was not, as after Booker, she was not constrained by the extraordinary sort of showing that was required prior to Booker, which, believe me, we attempted in many, many cases over the last 20 years. She was not shackled in the way she would have been a year earlier. And Your Honor, I think, hit it on the head. In many ways, this Court said you don't focus on just, you don't just cherry pick one factor and focus on that and say is that reasonable by itself. Here, I think all three of them, age and health and the lack of prior criminal history, all mesh together and created a very significant basis for the sentence that she gave. The fact that, and this was true in the analysis even before Booker came out, that the lack of criminal history in a person of age in their 50s at the time of the offense in this case is more significant than the lack of criminal history in somebody who hasn't been around so long and who hasn't had as much experience. Let me focus specifically on that and do so with reference to this case because in some ways it surprised me a little bit that this was considered, I'll use the old language, for lack of something else, a departure or a downward factor here. Most people convicted of white collar offenses don't have a long rap sheet. It's the first time they're picked up. And they're not likely to do it again because the spotlight's on them. In this case, the criminal charges really encompass two separate episodes of misconduct. And there were suggestions, which the government alluded to in its argument, that there was some stuff in the closet from the past so that it's hard to say in this case, with whatever our reasonableness review entails, that these are people that are squeaky clean but for one unfortunate blip and that blip is just not to be considered because the record doesn't suggest there was just one blip. There were at least two that they were convicted of. So how does this case justify a departure-downward type sentence, a lower than typical sentence because of their lack of criminal history? I think, first of all, I want to say that the government counsel indicated that the court found that they had committed fraud in this prior uncharged incident, which incidentally occurred 15 years earlier, didn't result in a civil judgment, much less any sort of criminal conviction. That was very hotly contested, whether that occurred or not, and it was briefed to death in the papers below. The court may have indicated she was troubled by it, but she did not find that they had committed some uncharged offense in the past. To answer your question, I think that it – she weighed that And she did say she was troubled by some of this, you know, allegations of prior conduct. But I think, as I said before, the fact that they were 60 years old, that this was essentially their first offense. The two different offenses in this case were with the same parties and the same – it was – they really – I don't think they were two distinct and separate sort of crimes. So it really was viewed by – properly by the district court as their first offense after 50-plus years of law-abiding citizenship. And this was against a backdrop, which the court wouldn't have had time on her calendar to elucidate for the benefit of a reviewing court, of some of the most unbelievable character letters. And I know it's – people think it's easy to get character letters for – it's called a hunt or whoever, it doesn't matter. But in this case, it was unlike anything we'd ever seen before. These were truly remarkable – the government will disagree, but until the problem that they ran into in this case, and we set out why they ran into that problem, these were true – two highly, highly extraordinary people. And I think the court took that into account. Lack of criminal history in any case, I think, is a very, very significant factor, especially in this case. But that's sort of a sample of what we're dealing with, though, because in answering this lack of criminal history, you've reflected upon something which may be related in terms of sterling character letters, but that's not something the judge actually pointed to as the reason for her sentence. Now, they tie together. What kind of people are they? But to the extent that the law requires a more specific articulation, and our cases came since she imposed a sentence, so it's a little bit of after the fact, can you really say that her articulation here lets us go and look at those sterling character references as a justification for a sentence when she didn't make reference to them? Well, it's – I think so, and I think that in terms of judicial economy of the district court and of this court, the – you know, where is the line going to be drawn? How much elucidation is required? I think particularly in this case where by the end of the case, the court and the parties were talking in shorthand to each other because the issues have been briefed so thoroughly that I think you can fairly infer that when the judge set forth those three very bedrock factors, that she wasn't doing it in a factual vacuum. She was doing it based on what had been presented to her and what she repeatedly said she had looked at and relied upon. You know, and again, it's a big gray area because where do you draw the line? But I think that busy district courts under just judicial economy can't treat every case like it's a capital case where they have to go through all the mitigating and aggravating factors and to enunciate them and elucidate upon them. Every sentencing will turn into an hour or two-hour long proceeding. And in this case, I think the court is entitled to and should look beyond the bare words of the judge to look at – she did identify, unlike in some of the other cases, like Icardi, the judge didn't even identify what he or she was looking at. Here she did. And the court has the record of what the basis of those factors were. It was lengthy. It was complete. It was compelling. And I submit, Your Honor, that that should be enough. But here's where I have my problem. If we say, okay, she doesn't have to elaborate, but if what she gives us isn't what you give us when I ask for an explanation as to why it's reasonable, let's suggest that, well, do we just assume that she's thinking the right things in the background? I mean, this isn't just a requirement to articulate. If we're to judge reasonableness at all, we need to know what the basis for deciding – and, again, I'll have to use the same language because I haven't figured out what the new language is going to be – this departure downward or this sentence that seems less than other people are getting for the same offense, what's exceptional about these people? And she articulated three things. I'm not sure how exceptional those characteristics are. And when I ask you about it, you start telling me about a fourth, which she didn't talk about. Now, maybe she shouldn't be required to talk about it, but then how can we weigh that if it's not on the record? Well, I was talking – I'm not sure I was talking about a fourth because I was talking about it as a basis for the lack of criminal history. 3553A starts off with the introduction as you look at the history and characteristics of the defendant. This is a process she clearly did. She said she did. And when the government says no prior records, so what? It's already considered under the guidelines. I think that just misstates the basic argument here. It's more than a 21-year-old young man who doesn't have a criminal history, who's got no family attachments. It's sort of just out there in the world here. I think it's clear that the Court took that into account under that factor. And I'm concerned about using up too much of our time, Your Honor, so. What about letting us hear from Mr. Hamm? Anna, I, at least personally, don't have much of a Butler problem. He said you were going to focus on both. But I do have a question on the restitution that I would appreciate your answering it. Yes, Your Honor. As I understand it, what the district judge did was to make the all-too-confusing finding with respect to the securities restitution issue. Then there was some colloquy which shifted to NUCOM and ACTRADE. And the judge then basically said, for the same reason, I'm going to deny it. Here's my question. I don't understand how the same it's-too-confusing-and-complicated-to-figure-out finding can apply when there are only two victims who are clearly identified and when there is an admission in the plea agreement that the amount of the loss is at least $1.1 million, which apparently this district judge found was the correct loss amount with respect to a co-defendant. So how does one figure or get out of that pickle from your point of view? Yes, Your Honor, I think I can address that. The court made a statement early on under the two exceptions to the mandatory restitution. One was the number of identifiable victims. The other was the complexity and the effect it would have on the sentencing process to figure it out. With respect to NUCOM and ACTRADE, let me point out as a predicate, the government had 19 months to put the evidence in. Well, what evidence is there to put in? I mean, there's an admission in the plea agreement to $1.1 million worth of loss. What more evidence is there? Well, I think- Except that they're still alive, ready to receive the money, which is the evidence that they did put on. Well, I think there are some other issues. One, the court has to find an identifiable victim. And two, the amount of restitution. Now- Admitted to $1.1 million. They admitted to the loss of $1.1 million as to NUCOM and $1.1 million as to ACTRADE. But when NUCOM, on the date of sentencing, what did the court have? The court had a to-whom-it-may-concern letter from an entity called NCOM. Behind that entity, basically, what the facts were that are in the record is that somebody named Kashani paid the taxes for NUCOM and reactivated that company. And there's an FBI 302 that's in the record in which Mr. Kashani said he wasn't one of the original investors in NUCOM. So, effectively, what the government would have been saying is, let's put form over substance. This is the continuation on paper of this entity. Send $1.1 million to this entity. Presumably goes in the pocket of Mr. Kashani. He indicated in the FBI 302 that it was just him and his father who now have the company. And he's not the right victim because he's not out anything. So I think the government had to establish more in their burden of proof to say, here are the people who actually lost money, who are out of pocket. You tell me in corporations you have to pierce to the shareholders? Is that what you're saying? So if I defraud a corporation, the government has to find out they cut the point to each shareholder, how much a shareholder lost? I don't understand that. Well, the company at that point had become defunct. NUCOM no longer existed. Then it was reactivated. Not paying your taxes in California happens all the time to companies. Some are active and going forward and they just forget to pay their taxes. I don't understand why you say the company is defunct. Well. And anyway, you pay the taxes, you make the company live again. The company is now live and entitled to collect things. Your Honor, I think the Court would be entitled to look behind and say, who actually lost the money and what pocket will this money go to? Also, I would point out that there was significant disagreement. Even though there was an amount of loss stated, there was disagreement as to whether it was embezzlement versus a loan, what may have been outstanding at that point. None of those issues were addressed by the government. I'd also move on to the ACTRADE issue. ACTRADE, I think, is even more interesting in that ACTRADE went into liquidation. So all we had on ACTRADE was a letter saying, send checks here. There was no indication as to the amount due ACTRADE. And there was also evidence in the record that ACTRADE was bonded and that the debt paper, these tabs, were actually held by another affiliate, IMG Bearing. So the Court didn't know on the date of sentencing whether ENCOM still existed. Those letters were almost a year old. Whether ACTRADE liquidation trust still existed. That letter was in June the year before. Didn't know how much was actually owed ACTRADE, if anything. If ACTRADE had been reimbursed by the insurance company, maybe the insurance company is the proper victim for restitution purposes. The point of restitution, obviously, is to get the cash in the hands of those people who actually lost it. And I think there was an issue. And I think the Court could say, we're 19 months after the change of plea. The sentence has been delayed 19 months. This is too complex to figure it out. We have to bring all these parties in. I would point out none of them showed up for sentencing, and they didn't fill out the victim impact statements. Okay. Thank you for answering the question. Mr. Kim. Your Honors, with respect to restitution, none of the concerns and issues that were just raised by Mr. Hanna were issues that were part of the district judge's findings. I think that if you look at the record, either the district judge simply didn't make findings with respect to restitution as to the two victims, or the findings that it did make are just simply not supported by the record. The government did support, submit ample documentation with respect to restitution. I'd like to turn, if I may, to really the first question that you, Judge Reimer, asked the defense counsel, which is maybe all that's required under reasonableness review is what the other circuits have referred to as procedural reasonableness and not substantive reasonableness. All of the other courts that have really discussed this issue have held that there are two aspects to reasonableness, procedural and substantive. And I think that there's nothing in any of this Court's precedents that indicate that simply stating reasons, no matter how flimsy those reasons are, no matter how unexplained they are, that simply because a district judge goes on with reasons of a requisite or a certain number or talks to a certain length, that simply because of that, the sentence can be upheld as reasonable. Thank you. Thank you. And thank you, counsel. The matter just argued will be submitted. That's your argument in Astrin. Thank you.
judges: Fernandez, Rymer, Clifton